UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

William Jeffrey Gilliam,

Debtor(s).

C/A No. 96-76468-JW

Chapter 7

ORDER

**FILED**
at ___ O'clock & ___ min ___ M

OCT 22 2008

United States Bankruptcy Court
Columbia, South Carolina (25)

**ENTERED**

OCT 2_ '08

B. R. M.

This matter comes before the Court upon the motion of the Debtor, William Jeffrey Gilliam, to Convert the Case from Chapter 7 to Chapter 11 and the Debtor's Objections to Claims of the United States Internal Revenue Service ("IRS") and the South Carolina Department of Revenue ("SCDOR").[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[2]

### FINDINGS OF FACT

1.  This case, which was commenced by Debtor on July 8, 1996, has a long history that has been reflected in multiple orders of this Court.

2.  This case has been administered in Chapter 7 since its conversion from Chapter 11 by order entered January 28, 1998. Robert F. Anderson ("Trustee" or "Anderson") has served as the Chapter 7 Trustee since February 20, 1998.

---

[1] This case was assigned to the undersigned on March 1, 2006 upon the retirement of Judge Wm. Thurmond Bishop.
[2] To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted.

3. Debtor received his discharge on May 4, 1999. Since that time, the case has remained open in order to collect a distribution from a related Chapter 7 case, *In re Marine Energy Systems Corp,* C/A No. 97-01929 ("MESC case").[3]

4. On October 21, 1996, the SCDOR filed a proof of claim in this case for unpaid state income taxes for 1993 in the amount of $360,980.44. The SCDOR filed an amended claim in the amount of $567,770.68 on April 13, 1998. On January 25, 2001, the SCDOR filed a second amended claim in the amount of $1,157,339.63 for individual income taxes for 1993, 1994, and 1995.

5. On October 15, 1997, the IRS filed a proof of claim in this case in the amount of $2,622,213.39 for unpaid income taxes for 1993 and 1995, a trust fund recovery penalty for 1995, and pre-petition employment tax liabilities for 1994 through 1996. By all accounts, the anticipated distribution from the MESC case would go to the payment of the IRS's claim, which is currently the subject of an IRS administrative proceeding.

6. The Trustee has not objected to these proofs of claim.

7. Debtor has repeatedly attempted to challenge the claims filed by the SCDOR and IRS. In November of 1997, Debtor filed an amended tax return (Form 1040X) for 1993 with the IRS, which sought to carry back a portion of the net operating loss claimed on his 1996 personal tax return to eliminate his 1993 tax liability. In May of 2000, the IRS disallowed this amended tax return for insufficient documentation of the claimed loss. Debtor then submitted a second amended return for 1993 in March of 2006, which was similarly denied.

---

[3] The most recent distribution from the MESC case has not yet been made because the IRS and the SCDOR served competing notices of levy on the MESC Trustee, but the priority issue between the two taxing authorities has since been resolved. This distribution is the subject of an adversary proceeding that is currently pending in the MESC case (Adv. Pro. No. 08-80017).

8. In March of 2003, Debtor filed an adversary proceeding in this Court seeking a determination of his outstanding income tax liabilities to the IRS for 1993 and 1995 and a preliminary injunction enjoining further collection of these taxes. Debtor's complaint was dismissed for lack of service and personal jurisdiction and his subsequent motion for reconsideration was denied.

9. On January 21, 2005, Debtor filed an objection to the proofs of claim filed by the IRS and SCDOR.

10. By order entered September 23, 2005, this Court abstained from hearing Debtor's objections to the claims of the IRS and SCDOR, stating that Debtor lacked standing to object to the claims of the IRS and SCDOR unless the tax debts were nondischargeable (which the Court found Debtor had not demonstrated) and stating that, even if the claims were nondischargeable, the allowance, disallowance, or reduction of the claims would appear to have no direct effect on the debtor's bankruptcy estate. Debtor did not appeal that order.

11. On March 16, 2006, Debtor filed a Motion to Remove Robert F. Anderson as Chapter 7 Trustee ("Motion to Remove") on the grounds that the tax returns filed by Anderson were not authorized by statute, adopted improper tax positions and included knowing false and fraudulent statements. At the hearing on May 2, 2006, upon the Court's questioning regarding the need for proof, including expert testimony, to substantiate his arguments, Debtor elected to withdraw the Motion to Remove.

12. In December 2007, Debtor requested a Compliance Due Process hearing before the IRS regarding his tax liability for tax periods ending December 21, 1993, December 31, 1995, and December 31, 1996 ("Administrative Proceeding"). It appears that a hearing was conducted on April 10, 2008, but the hearing officer has not yet rendered her decision.

3

13. On June 9, 2008, Debtor filed a motion to compel Anderson to file certain amended tax returns, to correct previous returns, and to challenge the claims of the SCDOR ("Motion to Compel"). The Trustee, IRS, and SCDOR filed objections to the Motion to Compel. Debtor argued that requiring such action by Anderson would extinguish the federal and state tax debt and the underlying levies and provide a greater distribution to unsecured creditors. Debtor presented no testimony or evidence to support his allegations at the hearing on the Motion to Compel. On August 11, 2008, twenty days after the hearing on the Motion to Compel, Debtor filed a Motion to Supplement the Record to offer proof, which was denied by order entered August 12, 2008. The Court, by separate order entered on August 12, 2008, denied Debtor's Motion to Compel based on Debtor's failure to present evidence supporting his claims. On August 22, 2008, Debtor filed a motion to amend or vacate the August 12, 2008 order, which was denied by order entered September 19, 2008. Debtor filed a motion for leave to file amended motion to compel on September 4, 2008, which was also denied by order entered September 19, 2008.

14. On July 9, 2008, Debtor filed the motion to convert the case from Chapter 7 to Chapter 11 ("Motion to Convert"). The IRS, the Trustee, and the United States Trustee filed objections to the Motion to Convert.

15. On September 4, 2008, Debtor again filed objections to the claims of the IRS and SCDOR.

16. On September 29, 2008, Debtor filed a Notice of Appeal of the Court's August 12, 2008 order denying Debtor's Motion to Compel and the September 19, 2008 orders denying the Debtor's motion to amend or vacate and motion for leave to file amended motion to compel.

4

17.     On October 14, 2008, the IRS and SCDOR filed responses to Debtor's objections to claims opposing the relief sought by Debtor and requesting that the Court abstain from hearing these matters.

## CONCLUSIONS OF LAW

Section 505(a)(1) of the Bankruptcy Code provides this Court with the jurisdiction and authority to hear and determine tax liabilities arising either before or after the filing of a case under title 11. See 11 U.S.C. § 505(a)(1). Nevertheless, the Court has the discretion to abstain from hearing such matters. See In re Luongo, 259 F.3d 323, 330 (5th Cir. 2001)("The bankruptcy court's ability to abstain is premised on Congress' use of the word 'may' in § 505."); Kohl v. IRS (In re Kohl), No. 08-3028, 2008 WL 3877130, at *4 (Bankr. N.D. Ohio Aug. 19, 2008)("[A] bankruptcy court's exercise of jurisdiction under § 505 is permissive not mandatory.") Courts have applied a number of nonexclusive factors to determine whether to abstain under § 505, including (1) whether bankruptcy issues predominate; (2) the complexity of the tax issue; (3) whether a bankruptcy purpose would be served; (4) the need for orderly, efficient, and expeditious administration of the case; (5) the legislative purposes of § 505; (6) the length of time to resolve the matter; (7) the burden on the docket; (8) the asset and liability structure of the debtor; (9) uniformity of assessment; (10) potential prejudice to the debtor, taxing authority, and creditors; and (11) other factors such as judicial economy, fairness, and convenience to the litigants. See Luongo, 259 F.3d at 330; In re New Haven Projects Ltd. Liab. Co., 225 F.3d 283, 289 (2d Cir. 2000); In re Dees, 369 B.R. 676, 677-78 (Bankr. N.D. Fla. 2007); In re Fyfe, 186 B.R. 290, 292 (Bankr. N.D. Ga. 1995).

In this case, several of these factors weigh in favor of abstention. First, it appears that nonbankruptcy issues predominate. Debtor's objections to the claims of the IRS and SCDOR

raise issues such as the validity of the assessments, the validity of deductions, the appropriate tax rate to apply and whether certain losses can be carried back, which are governed by tax law. It further appears that Debtor's main objective in seeking the conversion of his case to a case under Chapter 11, just as it was with the previous Motion to Remove and Motion to Compel, is to gain the ability to eliminate or reduce the tax claims of the IRS and SCDOR and to make amendments to his tax returns in order to reduce his tax liabilities, which is a proverbial end run around the previous orders denying him such relief.

Second, it appears that hearing these matters would not result in a more expeditious resolution of this bankruptcy case. The parties have advised the Court that they intend to present substantial testimony, including expert witness testimony, regarding these matters. Based on the pleadings filed thus far, it is unclear whether the tax issues in this case will be difficult or complex, but Debtor has raised these same issues, with respect to the IRS, in the Administrative Proceeding. The parties have advised the Court that the hearing on these issues has been completed and a decision is forthcoming. Given the convoluted and long history of this case and the anticipated extent of testimony required, it appears that it would likely take a significant amount of time for this Court to hear these matters and to render an opinion. Debtor has elected to pursue the determination of his tax liabilities to the IRS in an alternative forum. Certainly, this Court does not deal with these types of tax questions with the same frequency and with the same degree of specialized skill as the hearing officer for the Administrative Proceeding. The availability of this alternative forum to resolve these tax issues appears to outweigh any prejudice to the parties resulting from this Court's abstention from hearing these matters, especially considering the expertise and specialization of the alternative forum.

Third, the legislative purpose of § 505 appears to weigh in favor of abstention in this case. The purpose of § 505 has been said to be two-fold:

> (1) affording a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate, and (2) providing an opportunity for the trustee, on behalf of the creditor, to contest the validity and amount of a tax claim when the debtor has been unwilling or unable to do so.

In re Luongo, 259 F.3d at 330. It does not appear that either of these purposes would be served by the Court's exercise of its jurisdiction to determine Debtor's tax liabilities in this case. First, considering the pending decision in the Administrative Proceeding, the Court has no reason to believe that the tax liability issues with respect to the IRS would be resolved more quickly in this Court. In fact, it appears that if this Court were to hear these issues, it could further delay the conclusion of this case and would be unnecessarily duplicative. Furthermore, due to the age of the returns in question, the Court has significant questions regarding whether it would have the ability to fashion relief for Debtor if he was ultimately successful in obtaining conversion of the case, filing amended returns, and objecting to these claims. Second, the Trustee has exercised his discretion and elected not to dispute the claims of the IRS and the SCDOR in this case.[4] Debtor has elected to contest the IRS claims through the Administrative Proceeding. It is unclear from the record whether the Administrative Proceeding addressed all the issues raised in Debtor's objection to the IRS's claim, but it appears from an affidavit submitted by Debtor in an adversary proceeding related to this case that all substantive issues regarding Debtor's tax liabilities to the IRS were discussed and analyzed at length during the April 10, 2008 hearing and "the CDP proceeding will consider all underlying federal tax liabilities."[5] There is no apparent benefit to the estate that would warrant the Court's present consideration of the claims of the

---

[4] This Court's order denying Debtor's motion to compel the Trustee to exercise such discretion is currently on appeal.

[5] See William J. Seidel Aff. At 2, Ex. 1 to Mot. To Stay (C/A No. 97-01929-W, Adv. No. 08-80017).

SCDOR, given the fact that SCDOR's lien is junior to the lien of the IRS and it presently appears unlikely that SCDOR will receive a distribution in this case. See Kohl, No. 08-3028, 2008 WL 3877130, at *4 ("[Section] 505(a)(1) does not function as an alternative forum for tax litigation when such litigation would have no impact upon the administration of bankruptcy case.") The IRS's claim, which is presently being considered in the Administrative Proceeding, appears to be first in priority and entitled to receive all distributions presently contemplated from the MESC case. Further, the issues raised by the Debtor regarding SCDOR's claims appear to be state law issues.

Fourth, this Court already abstained from hearing Debtor's objections to the claims of the IRS and SCDOR by final order entered September 23, 2005. The Court finds no cause to reconsider the September 23, 2005 order at this time.

Finally, interests in judicial economy weigh in favor of abstention, considering that the Court has repeatedly spent time and efforts on these same issues, which have been raised over and over again by Debtor under several different guises.

For the reasons set forth herein, the Court hereby exercises its discretion to abstain pursuant to § 505(a) from hearing the merits of the Objections to the Claims of the IRS and SCDOR. Further, as Debtor admitted in pleadings filed in this case,[6] Debtor bases his Motion to Convert on the same tax issues raised in the Objections to Claims and desires to take control of the estate as debtor in possession to seek amendment of the estate returns. Debtor further admitted that the Motion to Convert aims towards accomplishing the same goal as the Motion to Compel, which is currently on appeal. Since the only cause for conversion cited by Debtor deals

---

[6] See Debtor's Motion for an Extension of the Deadlines in the Court's September 23, 2008 Scheduling Order, filed September 30, 2008.

with these tax issues and the Court has determined that it will abstain from hearing these tax issues, the Court finds that it is appropriate to deny Debtor's Motion to Convert.

Therefore, based on the record in this case, the arguments of the parties, and the reasons set forth in this Order, it is hereby

ORDERED that Debtor's Motion to Convert is denied without prejudice; and

IT IS FURTHER ORDERED that the Court will abstain from making a determination regarding Debtor's Objections to the Claims of the IRS and SCDOR.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
October 22, 2008